## Estate of Veytsman v New York City Health & Hosps. Corp.

2024 NY Slip Op 34005(U)

November 12, 2024

Supreme Court, Kings County

Docket Number: Index No. 505521/2015

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
THE ESTATE OF DORA VEYTSMAN BY RIMMA
VEYTSMAN AS ADMINISTRATRIX,

   Plaintiff,

  -against-

NEW YORK CITY HEALTH & HOSPITALS
CORPORATION and HAMILTON PARK NURSING
AND REHABILITATION CENTER,

   Defendants.
-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 505521/2015
Mo. Seq. 27

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

NYSCEF #s: 533 – 535, 536 – 542, 548 – 559, 561 – 563, 564, 565 – 566

  Defendant, NEW YORK CITY HEALTH AND HOSPITALS s/h/a NEW YORK CITY HEALTH & HOSPITALS CORPORATION ("NYCHHC") moves this Court for an order pursuant to CPLR § 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them in its entirety. Plaintiff submitted opposition.

  This action was commenced on May 5, 2015, by the filing of a Summons and Verified Complaint alleging medical malpractice for treatment rendered at NYCHHC/Coney Island Hospital ("CIH"). During her admission to CIH, the patient was discovered to have a right ulnar fracture and right arm/wrist cellulitis was diagnosed. Plaintiff contends that during her admission from September 13, 2014 through September 29, 2014 NYCHHC/CIH departed from the standard of care by failing to timely diagnose the patient's injury to her right arm/wrist and that this departure caused and or permitted the patient to develop cellulitis on the right arm as a result of negligent acts or omissions by the CIH staff. Plaintiff also alleges NYCHHC/CIH departed from the standard of care by negligently treating the patient and that these departures caused or permitted Ms. Veytsman to contract an infection and/or suffer a severe reaction, with acute and lasting sequela.

1

"In determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (*Stukas v Streiter,* 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:

> "The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted].

In support of NYCHHC's summary judgment motion, the movant submits an expert affirmation from Dial Hewlett, Jr., M.D. FACP, FIDSA ("Dr. Hewlett"), a licensed physician certified in internal medicine with a sub-certification in infectious disease. NYCHHC additionally submits an expert affirmation and a supplemental expert affirmation from Robert Pae, M.D. ("Dr. Pae"), a licensed physician certified in orthopedic surgery who reviewed the radiology films. In further support, NYCHHC also submits medical records and deposition transcripts. This Court finds that Dr. Hewlett and Dr. Pae have established their qualifications in their respective fields to opine on the applicable standard of care for the issues in this case.

Based on Dr. Pae's review of the record, he opines Coney Island Hospital staff acted in accordance with the accepted standards of medical practice including the evaluation, diagnosis, care, and treatment rendered. In respect to patient's right arm/wrist fracture, movant's orthopedic surgery expert, Dr. Pae, opines that the patient's facture occurred weeks before this admission. Dr. Pae states that "[i]mmediately after a fracture, soft tissue swelling and sharp fracture lines are present on radiographs." However, he opines that in this case, Ms. Veytsman's

2

[* 2]

x-ray films do not exhibit sharp fracture lines and rather her ulna fracture had smooth edges indicating "at least several weeks of healing had already occurred at the fracture site." Dr. Pae opines that the "healing process of a long-bone fracture is union through callus formation." The expert opines the amount of callus formation surrounding Ms. Veytsman's ulna fracture on the September 15, 2014 x-ray indicates that more than four weeks had passed since the fracture. Dr. Pae opines the amount of callus on the x-rays could not have formed over two days upon her admission to CIH on September 13, 2014 and the x-ray on September 15, 2014.

The expert also opines the patient was appropriately treated by CIH for her healing ulna fracture during her admission from September 13, 2014 through September 29, 2014 as they ordered an Orthopedic Surgery Consult, a follow up x-ray, and applied a splint to decrease the pressure on the ulna to heal faster and decrease the chance of refracture. Dr. Pae opines that throughout Ms. Veytsman's admission, actions taken by staff at CIH did not cause or contribute to her injuries.

Further, NYCHHC submits an expert affirmation of Dr. Hewlett an internal medicine expert with a sub-certification in infectious diseases to opine on the care and treatment rendered to the patient. Based on Dr. Hewlett's review of the record, he opines Coney Island Hospital ("CIH") acted appropriately and in accordance with the accepted standards of medical practice including the evaluation, diagnosis, care, and treatment rendered. The expert opines CIH acted appropriately upon patient's admission on September 13, 2014, wherein CIH "appropriately obtained Ms. Veytsman's history, assessed her conditions, and ordered appropriate laboratory tests." Dr. Hewlett opines the laboratory results indicated the patient "was severely dehydrated and her kidneys were failing" and the patient's urinalysis "revealed findings suggestive of a UTI." The expert notes the patient was "diagnosed with left leg cellulitis, a superficial skin infection, and the ED physicians suspected that she was in septic shock." He opines the CIH physicians appropriately treated Ms. Veytsman's life-threatening conditions "with broad spectrum empiric I.V. antibiotics including, Vancomycin and Zosyn, which were effective in treating cellulitis of the lower extremity, the infected, sacral ulcer and the UTI." Dr. Hewlett opines "Ms. Veytsman's laboratory values returned to more acceptable levels, and by discharge, her WBC (10.0) was within normal range."

Regarding the patient's right arm/wrist fracture, Dr. Hewlett opines CIH appropriately took x-rays of Ms. Veytsman right-wrist and right-hand after "CIH physicians documented swelling and a purulent collection on the dorsal surface of Ms. Veytsman's right-hand and right wrist that was erythematous and tender" on September 15,

3

[* 3]

2014. He notes "the right-wrist x-ray revealed a healing fracture of the ulna." The expert opines that based on his review of the records, the fracture occurred four weeks before admission to CIH and the swelling and pus collection on the dorsal surface began to present two days after the patient's admission to CIH. On this basis, the expert opines that the skin condition symptoms are not related to the healing of the ulna fracture.

With respect to the patient's infection on her right dorsal hand and wrist, Dr. Hewlett, a physician certified in internal medicine with a sub-certification in infectious diseases, opines that CIH appropriately ordered an infectious disease consult upon the patient's presentation of "redness, ecchymosis and pus collection" on September 15, 2014, two days after her admission to CIH. The expert opines CIH physicians properly diagnosed Ms. Veytsman's right dorsal hand and wrist skin condition as cellulitis and possible localized abscess. The expert opines patient's presentation of swelling, redness, pus collection and blisters are common signs of cellulitis and her white blood cell count increase manifesting at the same time of her clinical symptoms support a diagnosis of cellulitis. Dr. Hewlett opines CIH properly treated Ms. Veytsman's cellulitis with "antibiotic therapy (Zosyn and Vancomycin) on admission to treat her left leg cellulitis and sepsis" and opines "[b]oth antibiotics are appropriate to treat cellulitis." The expert opines the infectious disease consultant properly added the antibiotic Meropenem to patient's treatment and defendant "properly applied daily topical bacitracin to the affected area." Dr. Hewlett opines Ms. Veytsman's wound immediately began to improve and that "CIH practitioners took all appropriate measures to treat Ms. Veytsman's cellulitis." The expert opines "[t]here is no evidence that Ms. Veytsman's cellulitis was the result of any medical negligence by the CIH staff."

Dr. Hewlett explains that cellulitis is a common "skin infection caused when bacteria breach the epidermis, the outermost and thinnest layer of skin. Bacteria can enter a microscopic laceration, broken, abraided, dry, flaky, or swollen skin, including scrapes, abrasions, surgical wounds, insect bites and injection sites." The expert opines an increased risk of developing cellulitis can be in individuals "of advanced age with poor skin integrity and weakened immune systems." Dr. Hewlett opines Ms. Veytsman, an 85-year-old, "had an increased risk of contracting cellulitis because her skin integrity was severely compromised by her advanced age, poor nutritional status, and dehydration." The expert opines Ms. Veytsman had a weakened epidermis that could be easily "broken by minimum levels of friction or shearing force." Dr. Hewlett opines that procedures requiring to break her skin such as blood draws, fluid resuscitation and antibiotic therapy were required to save her life and

4

[* 4]

that "these procedures were necessary and appropriate and performed within the standard of care." Further, Dr. Hewlett opines "[d]iabetes weakens the immune system" and can make an individual "more susceptible to contracting cellulitis." The expert opines there is no evidence that Ms. Veytsman's cellulitis was caused by any negligent acts or omissions by the CIH staff and once her symptoms manifested CIH physicians properly treated Ms. Veytsman. Dr. Hewlett opines "[b]y properly assessing and managing Ms. Veytsman's conditions, CIH physicians preserved organ functions, specifically reversed most of her kidney injury and saved her life."

Defendant, NYCHHC, has established *prima facie* entitlement to summary judgment, based on both expert's affirmations that they acted appropriately and in accordance with the accepted standards of medical practice including the discovery of the fracture, evaluation, diagnosis, care, and treatment rendered. Both experts also established *prima facie* entitlement to summary judgment as no alleged departures from the standard of care were the proximate cause of Plaintiff's ulna fracture nor her skin infection of cellulitis. In particular, Dr. Pae established that the facture resulted from a more than 4 week old injury. The burden now shifts to Plaintiff to raise an issue of fact.

It is well established that "(w) here the defendant has satisfied that burden, a plaintiff must 'submit evidentiary facts or materials to rebut the defendant's prima facie showing'" (*[M.C. Huntington Hosp.,* 175 A.D.3d 578, 579 [2019]]*, quoting *Stukas v. Streiter,* 83 A.D.3d at 30). " 'Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause' " (*M.C. v. Huntington Hosp.,* 175 A.D.3d at 579, quoting *Novick v. South Nassau Communities Hosp.,* 136 A.D.3d 999, 1000 [2016] [internal quotation marks omitted]). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (*Feinberg v. Feit,* 23 A.D.3d 517, 519 [2005])." *Joyner v. Middletown Med., P.C.*, 183 A.D.3d 593, 594 [2d Dept. 2020].

In opposition Plaintiff has not submitted an affirmation of a medical expert to prove a deviation from accepted standards of medical care and to establish proximate cause. Thus, Plaintiff has not raised any triable issues of fact and has not rebut defendant's *prima facie* showing. It is noted that during oral argument, Plaintiff argued that the patient suffered trauma at CIH and that the injury should have been discovered sooner during the admission. However, as stated above, Defendant has established prima facie that the fracture was an old fracture

5

and therefore could not have occurred in the first two days of her admission at CIH. Plaintiff also did not offer expert opinion as to the age of the fracture. Consequently, an issue of fact is not raised as to this claim either.

Accordingly, defendant's motion is granted.

**It is hereby:**

**ORDERED** that Defendant NYCHHC's motion (Seq. 27) for an Order pursuant to CPLR § 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint is **GRANTED**; and it is further

**ORDERED** that the caption is amended as follows:

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS

---------------------------------------------------------------------------X
THE ESTATE OF DORA VEYTSMAN BY RIMMA VEYTSMAN
AS ADMINISTRATRIX,
            Plaintiff,

   -against-

HAMILTON PARK NURSING AND
REHABILITATION CENTER,

            Defendants.
---------------------------------------------------------------------------X

The Clerk shall enter judgment in favor of NEW YORK CITY HEALTH AND HOSPITALS s/h/a NEW YORK CITY HEALTH & HOSPITALS CORPORATION ("NYCHHC").

This constitutes the decision and order of this Court.

**ENTER.**

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

6

[* 6]